IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

RICKEY HAGER,

       Plaintiff,

v.                            CASE NO. 2:04-cv-00282

JO ANNE BARNHART,
Commissioner of Social Security,

       Defendant.


**PROPOSED FINDINGS AND RECOMMENDATION**

     This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are Plaintiff's Motion for Summary Judgment and Defendant's Motion for Judgment on the Pleadings.

     Plaintiff, Rickey Rand Hager (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on December 18,

2001, alleging disability as of June 29, 1996[1], due to hearing, eye, back and neck impairments, high blood pressure and poor circulation. (Tr. at 21, 86-88, 96.)  The claims were denied initially and upon reconsideration. (Tr. at 21, 71-74, 76-78.)  On August 1, 2002, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 79.)  The hearing was held on March 17, 2003, before the Honorable John Murdock. (Tr. at 520-66.)  By decision dated July 30, 2003, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 21-36.)  The ALJ's decision became the final decision of the Commissioner on January 23, 2004, when the Appeals Council denied Claimant's request for review. (Tr. at 11-14.)  On March 22, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically

---

[1]  Claimant had previously applied for DIB and SSI.  Those applications were denied through the Appeals Council level, making the ALJ's decision of June 14, 1999, the final decision for purposes of judicial review.  Claimant did not appeal this decision.  The ALJ determined there were no grounds for reopening this decision and, as such, for SSI purposes, the relevant time period on the current application was from December 18, 2001, the date of the current SSI application, through the date of the current ALJ's decision.  The ALJ determined that for DIB purposes, the relevant time period was from June 15, 1999, through June 30, 2000, the date Claimant's insured status expired. (Tr. 22.)  Claimant does not challenge these findings.

determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2003).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.   Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform

3

other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.   20 C.F.R. §§ 404.1520(f), 416.920(f) (2003).   The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date.  (Tr. at 23.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of bilateral retinal scarring and bilateral nystagmus resulting in best-corrected vision acuity in the left eye of less than 20/200, best-corrected distant visual acuity in the right eye of 20/40, and some deficits in depth perception and peripheral field of vision; cervical, thoracic, and lumbar strain, superimposed upon minimal degenerative changes resulting in chronic neck pain and stiffness, shoulder pain, and low back pain; essential hypertension; and peripheral vascular disease in the lower extremities.  (Tr. at 24, 35.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr.

4

at 24.)  The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 24.)  As a result, Claimant cannot return to his past relevant work.  (Tr. at 24.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as rental clerk, recreational facility attendant, hand packer, and off-bearer, which exist in significant numbers in the national economy.  (Tr. at 33.)  On this basis, benefits were denied.  (Tr. at 34.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence.  In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.  Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the

conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was forty-five years old at the time of the administrative hearing. (Tr. at 531.) Claimant graduated from high school. (Tr. at 531.) In the past, he worked as television, radio and appliance repair man. (Tr. at 531, 547.)

<u>The Medical Record</u>

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize that evidence of record from the relevant time period briefly below.

<u>Evidence before the ALJ and Related to the Relevant Time Period</u>

The record includes a Medical Assessment of Ability to do Work-Related Activities (Physical) completed by Randall L. Short, D.O. on August 6, 1999. Dr. Short opined that Claimant could occasionally lift twenty pounds and frequently lift ten pounds, that Claimant could stand and/or walk a total of four hours in an eight-hour day, for a half hour without interruption and sit for the same amount of time. (Tr. at 140-41.) He opined that Claimant could occasionally climb, balance, stoop, crouch, kneel and crawl. (Tr. at 142.) He opined that Claimant's ability to reach, push and pull were affected by his impairments, and that Claimant had

6

certain environmental restrictions, including heights, moving machinery, temperature extremes and vibrations. (Tr. at 142.)

Dr. Short also completed a Medical Assessment of Ability to do Work-Related Activities (Mental) on August 6, 1999, on which he opined that Claimant had fair to good abilities in all areas. (Tr. at 144-46.)

Dr. Short completed a West Virginia Department of Health and Human Resources, General Physical (Adults) form on May 3, 2000. He opined that Claimant suffered from chronic cervical and lumbar pain (Claimant was in an automobile accident in 1996), blindness in the right eye and uncontrolled hypertension. He opined that Claimant was capable of sedentary work. (Tr. at 166.)

Dr. Short completed a West Virginia Department of Health and Human Resources, General Physical (Adults) form on April 11, 2001. He opined that Claimant has chronic lumbar strain, chronic cervical strain, blindness of the right eye and hypertension. He opined that Claimant was capable of light duty work on a part-time basis. (Tr. at 156.)

The record includes treatment notes from Dr. Short dated July 28, 1999, August 6, 1999, May 3, 2000, August 31, 2000, and January 28, 2002. (Tr. at 197-203.) On January 28, 2002, Claimant reported to Dr. Short for treatment of hypertension and for the purpose of establishing Dr. Short as his treating physician for purposes of obtaining SSI. Claimant reported continued back pain.

7

(Tr. at 197.)   Dr. Short completed an Agency Reporting Form
Physical on January 28, 2002, on which he indicated that Claimant's
diagnoses were upper respiratory infection and essential
hypertension.  (Tr. at 196.)

On February 6, 2002, Nilima Bhirud, M.D. examined Claimant at
the request of the State disability determination service.   Dr.
Bhirud concluded that Claimant had evidence of varicose veins in
both legs and a venous ulcer on the left leg.   Dr. Bhirud
recommended that Claimant see a vascular surgeon.   Regarding his
complaints of neck and back pain, Dr. Bhirud found no lumbar
tenderness.  Range of motion in the lumbar spine was normal.  There
was no cervical tenderness and range of motion was normal.  (Tr. at
213.)

On February 7, 2002, Tracy Pauley-Smith, M.A. examined
Claimant at the request of the State disability determination
service.  Claimant had fair social interaction, though Ms. Pauley-
Smith later stated that Claimant's social functioning was mildly
deficient, as evidenced by difficulty with eye contact likely due
to vision difficulties.  (Tr. at 220, 222.)  Claimant's speech was
relevant and coherent.   Claimant's observed mood appeared to be
irritable.  Claimant's affect was broad.  His thought processes and
content were within normal limits, his insight was fair and his
judgment was average.   Claimant endorsed fleeting suicidal
ideations without intent or plan.  Claimant's immediate memory was

8

within normal limits, his recent memory was moderately deficient, his remote memory was fair. (Tr. at 220.) Claimant's concentration was average. Claimant presented at the evaluation disheveled in nature with unkempt appearance and body odor. Ms. Pauley-Smith diagnosed depressive disorder, not otherwise specified on Axis I and deferred an Axis II diagnosis. (Tr. at 221.) She noted Claimant's persistence and pace were within normal limits. (Tr. at 222.)

On February 8, 2002, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light work, limited by an ability to stand and/or walk at least two hours in an eight-hour day, that Claimant should never climb ladders, ropes and scaffolds or crawl and that he could occasionally climb ramps and stairs, balance, stoop, kneel and crouch. (Tr. at 224-26.) Claimant has certain visual limitations and should avoid concentrated exposure to extreme cold, heat, wetness, humidity, noise, vibration, fumes, odors, dusts, gases, poor ventilation and hazards. (Tr. at 228.)

A State agency medical source completed a Mental Residual Functional Capacity Assessment on April 4, 2002, and opined that Claimant was not significantly limited in most areas, except that Claimant was moderately limited in the ability to interact appropriately with the general public. (Tr. at 234-36.)

9

John D. Cook, D.O. completed a West Virginia Department of Health and Human Resources, General Physical (Adults) form on April 25, 2002.  He opined that Claimant was limited to sedentary work. (Tr. at 242-43.)

On June 27, 2002, Dr. Cook completed an Agency Reporting Form Physical and opined that Claimant is totally disabled and will never be able to sustain gainful employment.  (Tr. at 240.)

On July 5, 2002, F. Joseph Whelan, M.D. examined Claimant at the request of Claimant's counsel.  Claimant was depressed and anxious and had a somewhat flat affect.  Claimant was oriented in all spheres.  He was alert, cooperative, fluent and articulate. Remote and recent memory and insight and judgment were intact. Fund of general information and IQ were within average range clinically.  Claimant had bizarre signs and symptoms such as auditory hallucinations and an increased startle reaction.  Dr. Whelan opined that Claimant had moderate restrictions in activities of daily living, moderate difficulties in maintaining social functioning, Claimant would be expected to show frequent deficiencies in concentration, persistence and pace and would show repeated episodes of deterioration or decompensation in work or work-like settings.  (Tr. 248-49.)  Dr. Whelan diagnosed reactive depression with some post-traumatic stress disorder features on Axis I and made no Axis II diagnosis.  He rated Claimant's GAF at 41.  Dr. Whelan opined that Claimant was totally disabled and

10

unable to perform gainful, substantial employment.  (Tr. at 249.)

A State agency medical source completed a Physical Residual Functional Capacity Assessment on July 9, 2002, and reaffirmed the previous residual functional capacity assessment.  (Tr. at 250-57.)

A State agency medical source completed a Psychiatric Review Technique on April 4, 2002, and opined that Claimant had mild restriction in activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence and pace and no repeated episodes of decompensation.  (Tr. at 268.)

On March 31, 2003, Dr. Cook completed a Medical Ability to do Work-Related Activities (Physical) and opined that Claimant could occasionally lift twenty pounds and frequently lift ten pounds. (Tr. at 274.)  He opined that Claimant could stand/walk for two hours out of an eight-hour work-day, twenty minutes without interruption.  He opined that Claimant could sit for three and a half hours, twenty minutes without interruption.  He opined that Claimant should never climb, balance and crawl and that he could occasionally stoop, crouch and kneel.  (Tr. at 275.)  He opined that Claimant's ability to reach, handle, feel, push/pull, see and hear would be affected by his impairments.  He opined that Claimant has environmental restrictions to height, moving machinery, temperature extremes, chemicals, noise and vibration.  (Tr. at 276.)

On March 17, 2003, Dr. Whelan completed a Medical Assessment of Ability to do Work-Related Activities (Mental) and opined that Claimant had poor abilities in almost all areas.  (Tr. at 278-80.)

Vocational Testimony at the Administrative Hearing

At the administrative hearing, the ALJ posed a hypothetical question that included the following limitations: light work, unlimited sit/stand option, occasional ability to climb, balance, stoop, kneel, crouch and crawl, a need to avoid extreme cold, vibration, hazardous machinery and heights and adequate monocular vision, but vision in the remaining eye corrected is 20/40.  (Tr. at 552-53.)  In response, the vocational expert identified the jobs of rental clerk, hand packager and off-bearer.  (Tr. at 553-54.)

Claimant's counsel modified the above hypothetical to include a limitation that the hypothetical individual would have "marked deficiencies in concentration, pace and persistence."  (Tr. at 563.)  The vocational expert testified that certain rental clerk jobs would not be affected, but that all other jobs would be eliminated.  (Tr. at 563.)

Evidence Submitted to the Appeals Council

On October 2, 2003, Mari Sullivan Walker, M.A. examined Claimant at the request of counsel.  Ms. Walker had examined Claimant once before in October of 1998.  (Tr. at 500-09.)  Claimant denied previous psychiatric history.  (Tr. at 511.)  Claimant's attention and concentration were poor.  Mood and affect

12

were depressed.   Claimant reported feeling worthless and useless
most of the time.  Mild paranoid thinking was noted.  Claimant had
no current suicidal ideations, but had in the past.  Claimant was
adequately groomed.  (Tr. at 512-13.)  Ms. Walker diagnosed major
depressive disorder, not otherwise specified, recurrent, severe and
anxiety disorder on Axis I and schizoid personality traits on Axis
II.  (Tr. at 514.)  Ms. Walker completed a Medical Assessment of
Ability to do Work-Related Activities (Mental) and rated Claimant's
abilities as fair to poor in all categories.  (Tr. at 517-19.)

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the Commissioner's decision is not
supported by substantial evidence because (1) the Appeals Council
erred in failing to consider new evidence offered by Claimant and
may have considered the wrong hearing transcript; (2) the ALJ did
not properly weigh the opinions of Claimant's treating physicians,
Dr. Short and Dr. Cook and the opinion of an examining physician,
Dr. Whelan; and (3) the ALJ's hypothetical question did not include
all of Claimant's mental limitations.  (Pl.'s Br. at 2-10.)

The Commissioner argues that (1) the ALJ correctly evaluated
the medical source evidence of record; (2) the ALJ's finding that
Claimant's depression is not a severe impairment is supported by
substantial evidence; and (3) the ALJ was not obligated to include
limitations related to Claimant's depression in the hypothetical
question.  (Def.'s Br. at 10-17.)

13

The court proposes that the presiding District Judge find that the Appeals Council did not err in its analysis of the new evidence submitted by Claimant.   The report and other evidence from Ms. Walker, which was first submitted to the Appeals Council, was dated October 2, 2003, approximately two months after the ALJ's decision on July 30, 2003.   The Appeals Council acknowledged this evidence, but returned it to the Claimant.   The Appeals Council explained in its decision that "[t]his new information is about a later time [after the ALJ's July 30, 2003, decision].   Therefore, it does not affect the decision about whether you were disabled beginning on or before July 30, 2003.   If you want us to consider whether you were disabled after July 30, 2003, you need to apply again.   We are returning the evidence to you to use in your new claim."   (Tr. at 12.)

The regulations, at 20 C.F.R. §§ 404.970(b) and 416.1470(b) (2003), require that new and material evidence be considered by the Appeals Council only where "it relates to the period on or before the date of the administrative law judge hearing decision." Indeed, where evidence "does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will return the additional evidence to you with an explanation as to why it did not accept the additional evidence and will advise you of your right to file a new application."   20 C.F.R. §§ 404.976(b)(1) and 416.1476(b)(1) (2003).

14

The return by the Appeals Council of new evidence offered by the Claimant was in keeping with the above regulations. The evidence from Ms. Walker postdates the ALJ's decision by a few months. Although Ms. Walker had once conducted a consultative examination of Claimant in 1998 (Tr. at 500-07), Ms. Walker had no treating relationship with Claimant, and her report does not speak to Claimant's condition during the relevant time period before the ALJ. The court can ascertain no reason why the presence in the record of another Claimant's transcript (Tr. at 520-49), an error first remedied at the District Court level, would have impacted the Appeals Council's decision. Claimant challenged the ALJ's decision because he failed to properly weigh the opinions of Claimant's treating physicians, and the court is hard pressed to understand how the absence of Claimant's transcript of the administrative hearing has an impact on that issue. As such, the court proposes that the presiding District Judge find that the presence of another claimant's hearing transcript instead of Claimant's does not provide a basis for finding the decision of the Appeals Council is not supported by substantial evidence. The court further proposes that the presiding District Judge find that the decision of the Appeals Council to return the new evidence to the Claimant was consistent with the applicable regulations cited above and is supported by substantial evidence.

Claimant next argues that the ALJ erred in weighing the
opinions of Claimant's treating physicians, Dr. Short and Dr. Cook.
Claimant argues that the opinions of these physicians are supported
by objective evaluations and other substantial evidence of record,
including that from Dr. Janicki.  (Pl.'s Br. at 7-9.)

In his decision, the ALJ found that "the level of treatment
fails to corroborate the claimant's complaints of constant,
frequently severe pain ...."  (Tr. at 27.)  In support of this
finding, the ALJ noted Claimant's irregular and sporadic treatment
with Dr. Short and Dr. Cook as follows:

> After following with Randal L. Short, D.O., a general
> practitioner, fairly regularly through August 1999, the
> record does not reflect any continuous medical
> management, regular follow-up, or even emergen[cy]
> treatment for musculoskeletal pain, although the claimant
> had a medical card during this period of time[.] In fact,
> the record consists primarily of annual examinations for
> the West Virginia Department of Health and Human Services
> ("DHHS") for the purpose of qualifying for social
> services: on May 3, 2000, by Dr. Short (Exhibit B4F, pp.
> 16-17); on April 11, 2001, by Dr. Short again (Exhibit
> B4F, pp. 6-7); and on April 25, 2002, by Dr. John D.
> Cook, a family practitioner) [sic]. Except for one
> check-up for hypertension in August 2000 (after the May
> examination), the claimant did not consult Dr. Short
> again until January 2002.  The treatment note indicates
> that the visit was prompted by the claimant's need to
> confirm his treating relationship with the doctor and
> provide a clinical basis for Dr. Short's response to an
> inquiry from the Disability Determination Section ("DDS")
> for records and medical information (Exhibit B5F, pp. 1-
> 4).  Dr. Short's reply to the DDS inquiry noticeably
> omitted any musculoskeletal condition from his treating
> diagnoses. Although the claimant testified that Dr. Cook
> is his primary care physician, the sum total of medical
> evidence submitted from Dr. Cook consists of his notes of
> an examination on April 25, 2002, the report to DHHS of
> his examination on April 25, 2002, and two medical

16

evaluations dated June 27, 2002, and March 31, 2003, for the benefit of the claimant's current Social Security claims, without evidence of any additional examinations or office visits (Exhibits B10F, pp. 1-6) [sic] and B15F).

(Tr. at 27.)

Later in his decision, the ALJ makes the following findings about the weight afforded the opinions of Dr. Short and Dr. Cook:

The undersigned notes that in the several assessments that Dr. Short tendered during the relevant time period, he held out that the claimant was essentially capable of light to sedentary work (Exhibits B1F, B4F, p. 16, and B4F, p. 6). The undersigned notes that in May 2000, Dr. Short did opine that the claimant would be unable to perform full-time work for approximately a year. The inconsistency of this conclusion alongside work restrictions (for example, no heavy lifting or prolonged standing) is understandable in light of the purpose of the assessment, which was a report to the DHHS that would be instrumental in determining whether the claimant received social services, including a medical card. The assessments of the state agency consultants at the initial level and upon reconsideration concurred in determining that the claimant had a maximum exertional capacity for light work (Exhibits B8F and B12F). In an assessment submitted by Dr. Cook in March 2003, the claimant's combined abilities to sit and stand and/or walk would not permit the claimant to complete an ordinary workday (Exhibit B15F). The medical and other evidence shows that the claimant is somewhat more limited than originally thought due to peripheral vascular disease, but not to the extent that his combination of symptoms are disabling. The record shows that the signs and symptoms of peripheral vascular disease, which the consultative medical examiner and Dr. Cook identified in February and April of 2002, were not present in Dr. Short's report of his examination in January 2001 (Exhibit B5F, p. 3). Dr. Cook's assessment is dated in March 2003, some months after his initial examination, but the record fails to document a history of increased signs and symptoms over time. The absence of any treatment for the condition indicates that it has been stable.

17

(Tr. at 32.)

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2003).  Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion.  Sections 404.1527(d)(3), (4), and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2003).  The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits.  20 C.F.R. §§

18

404.1527(d)(2) and 416.927(d)(2) (2003). Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." §§ 404.1527(d)(2) and 416.927(d)(2).

Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight generally is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." Martin v. Secretary of Health, Education and Welfare, 492 F.2d 905, 908 (4th Cir. 1974); Hayes v. Gardener, 376 F.2d 517, 520-21 (4th Cir. 1967). Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with

the record." Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986) (more weight given to an opinion by a specialist about issues in his/her area of specialty).

The court proposes that the presiding District Judge find that the ALJ adequately weighed the opinions of Claimant's treating physicians, Dr. Short and Dr. Cook, and his findings are supported by substantial evidence.  As the ALJ points out in his decision, Claimant received little in the way of ongoing treatment from Dr. Short or Dr. Cook, and instead, most of the evidence from these sources consists of examinations for the purpose of completing forms in connection with Claimant's efforts to obtain social services, including a medical card.  Evidence from these treating sources simply does not include clinical or laboratory diagnostic techniques revealing objective findings that would support the opinions of these physicians.  As the ALJ notes elsewhere in his decision, Dr. Short prescribed medication for Claimant's hypertension and, on one occasion, Ibuprofen, 200 milligrams, but neither Dr. Short, Dr. Cook, nor anyone else ever prescribed a TENS unit, narcotics analgesics or steroid injections.  (Tr. at 28.)

Furthermore, the other substantial evidence of record related to Claimant's physical condition does not support a finding of total disability.  Dr. Bhirud noted that although Claimant gave a history of neck and back pain, "[a]t the time of the examination there was no lumbar tenderness.  The range of motion of the lumbar

spine was normal.  There was no cervical tenderness.  The range of motion was normal."  (Tr. at 213.)   Although Dr. Bhirud found evidence of varicose veins in both legs and a venous ulcer on the left leg, the ALJ acknowledged additional limitations because of Claimant's peripheral vascular disease, including that Claimant required an at will sit/stand option.  (Tr. at 32.)

Claimant points to a Disability/Incapacity Evaluation completed by Dr. Janicki as being consistent with the evidence of record from Dr. Short and Dr. Cook.  Dr. Janicki completed a Disability/Incapacity Evaluation for the West Virginia Department of Health and Human Resources on March 31, 1998, and June 11, 2001 (Tr. at 150-51, 182-83), on which he opined that Claimant met or equaled the listing of impairments.  The evidence from Dr. Janicki does not contain a diagnosis, much less evidence of clinical or laboratory diagnostic techniques that reveal objective findings supporting a finding of disability for purposes of SSI and DIB.

The evidence upon which Claimant relies from Dr. Janicki, Dr. Short and Dr. Cook, which ultimately assisted Claimant in obtaining social services, has little bearing on whether Claimant is disabled for purposes of SSI and DIB.  The standards for obtaining a medical card or other State assistance and for obtaining SSI and DIB differ substantially.  "A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not [the Commissioner's] decision

21

about whether you are disabled or blind." 20 C.F.R. §§ 404.1504 and 416.904 (2003). If there were other substantial and well-supported objective evidence from Dr. Short, Dr. Cook and even Dr. Janicki supporting their opinions rendered in connection with Claimant's attempts to obtain a medical card other State benefits, the evidence from them might be entitled to more weight. But in this instance, where such evidence is largely unsupported, whether by these sources or the other substantial evidence of record, the ALJ was correct in granting such evidence little weight and, the court proposes that the presiding District Judge so find.

Finally, Claimant argues that the ALJ erred in the weight afforded the opinion of Dr. Whelan and in failing to find Claimant's mental impairments severe and, thereby, omitting any mental limitations from the hypothetical question. (Pl.'s Br. at 8-10.)

In his decision, the ALJ acknowledges that the previous ALJ, who rendered a decision from the time period from Claimant's alleged onset on June 29, 1996, through the date of his decision on June 14, 1999, found Claimant suffered from a combination of depression and pain, which limited Claimant to performing simple, one-to-two step, routine job instructions and low stress work activities. (Tr. at 29, 57.) Regarding the "B" criteria of the listings, the previous ALJ concluded that Claimant had slight restrictions in activities of daily living, moderate difficulties

22

in maintaining social functioning, seldom had deficiencies of concentration, persistence and pace and never had episodes of deterioration or decompensation.  (Tr. at 64.)

The current ALJ acknowledged that the evidence of record continued to support a finding that Claimant suffered from depression, though the ALJ concluded that this impairment was no longer severe.[2]  (Tr. at 30.)  In evaluating Claimant's impairments under the sequential evaluation for mental impairments, the ALJ concluded that Claimant had mild limitation in activities of daily living, social functioning and concentration, persistence and pace and never had episodes of decompensation.  (Tr. at 30.)  As such, the regulations direct a finding that the impairment is not severe. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2003).

The ALJ thoroughly explains his decision to diverge from the findings of the previous ALJ, and the court proposes that the presiding District Judge find that the ALJ's decision in this regard is supported by substantial evidence and consistent with Acquiescence Ruling 00-1(4), 2000 WL 43774 (Jan. 12. 2000).

Substantial evidence supports the ALJ's finding that Claimant has only a mild restriction in social functioning during the current period subject to adjudication.  The ALJ rejected certain

---

[2]  Claimant is correct in his assertion that the ALJ initially finds depression to be a severe impairment (Tr. at 24), but a thorough reading of the ALJ's decision makes clear that, in fact, he determined Claimant's depression was not a severe impairment.

ratings by Dr. Short on a Medical Assessment of Ability to do Work-Related Activities (Mental)[3], but Dr. Short rated Claimant's ability to make personal/social adjustments as good in all areas. (Tr. at 145.)   Ms. Pauley-Smith noted that Claimant's social functioning was only "mildly deficient," and this was due to difficulty with eye contact because of Claimant's eye impairment. (Tr. at 222.)   She noted that Claimant had attended church and talks to neighbors once in a while.  (Tr. at 222.)   The ALJ noted that Dr. Cook found Claimant's mental status to be "normal."  (Tr. at 239.)   The ALJ rejected the opinion of Dr. Whelan, noting that Dr. Whelan examined Claimant only once and then, eight months later, completed a Medical Assessment of Ability to do Work-Related Activities (Mental) and opined that Claimant was severely limited in all areas.   The ALJ explained that Dr. Whelan's clinical findings of bizarre signs and symptoms such as auditory hallucinations and an increased startle reaction are not present elsewhere in the record and that his findings are generally incongruent with the remaining substantial evidence of record. (Tr. at 30.)   In addition, the ALJ noted that neither Dr. Whelan, Claimant's primary care physicians or the consultative mental examiner, Ms. Pauley-Smith, recommended that Claimant seek psychiatric or psychological treatment, nor did Claimant obtain

---

[3]   The ALJ incorrectly refers to Dr. Short making "poor" ratings, when in fact, the ratings, in the areas of dealing with work stresses and maintaining attention and concentration were fair.  (Tr. at 144.)

such treatment despite having a medical card.  (Tr. at 31.)

The ALJ further supported his finding as follows:

The claimant attempted to portray himself as almost completely socially isolated. However, the inconsistencies in his presentation argue against more than a mild limitation due to psychological symptoms. The claimant showed up for the consultative psychological examination dirty and unkempt, unlike his appearance elsewhere in the record (c.f., Exhibits B7F and B11F). The claimant's successful self-employment for approximately eight years indicates that he has satisfactory social skills. The consultative psychological examiner observed some difficulty maintaining eye contact due to nystagmus and an irritable mood, but the claimant was generally cooperative. The consultative psychological examiner remarked that she was not forwarded any medical records, and therefore, her assessment of the claimant's functioning was based entirely on the claimant's self report (Exhibit B7F, p. 3). Dr. Whelan, who did have access to some medical history, noted the claimant's lack of history of "ongoing psychiatric treatment," referring to the claimant's having discontinued a brief period of medical therapy in 1998, during the previously adjudicated period (Exhibit B11F, p. 2). Dr. Whelan described the claimant as "cooperative, fluent, and articulate." The claimant's social activity is reasonably constricted by financial restraints, but the claimant testified that he talks with his neighbors occasionally and he has friends who stop by to check on him and take him places. The medical and other evidence does not corroborate any difficulty interacting with the general public, as the state agency psychological consultant opined (Exhibit B9F). The state agency assessment was primarily based on the consultative examination, there being no additional psychological evidence of record at the time (Exhibit B9F). The claimant functions in public - for example, he does his own shopping. The claimant interacted with customers during his part-time employment in 2000 and 2001, performing sales and taking telephone calls as well as servicing appliances. While an individual would reasonably be less able to cope with public interaction if he were in pain, the medical and other evidence does not support the severity of the pain that the claimant alleges, nor does the claimant report that he was having significant problems dealing with customers, per se

(Exhibit B1E, p. 2.)

(Tr. at 30-31.)

The ALJ's decision is well-reasoned and supported by substantial evidence with regard to his findings about Claimant's mental impairment.  At the time of the previous ALJ's decision, Claimant had been prescribed an anti-depressant (Tr. at 51), which he has since stopped (Tr. at 538-39).  No treating or examining medical source recommended that Claimant undergo counseling or pursue other ongoing mental health treatment.  Moreover, Claimant attempted to return to work in 2000 and 2001, and while he was unable to sustain this work, there is no indication that an inability to function socially, or any other mental limitation, kept Claimant from successfully returning to work.  (Tr. at 539-40.)  The ALJ's decision to diverge from the findings of the previous ALJ regarding Claimant's mental impairment and the ALJ's ultimate determination that Claimant does not suffer from a severe mental impairment are supported by substantial evidence, and the court proposes that the presiding District Judge so find.  The court further proposes that the presiding District Judge find that the ALJ did not err in failing to include limitations related to Claimant's non-severe mental impairment in his hypothetical question.  See Benenate v. Schweiker, 719 F.2d 291, 292 (8th Cir. 1983) (the hypothetical question may omit non-severe impairments, but must include those which the ALJ finds to be severe).

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge DENY the Plaintiff's Motion for Summary Judgment, GRANT the Defendant's Motion for Judgment on the Pleadings, AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing

27

parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

_____February 2, 2005_____
            Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge